UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

OMAR RASHAD POUNCY,

              Plaintiff,

v.

MICHAEL BURGESS et al.,

              Defendants.

_____/

Case No. 1:23-cv-279

Honorable Ray Kent

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff has been granted leave to proceed *in forma pauperis*. (ECF No. 4.) Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendants is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

2

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains occurred at the Oaks Correctional Facility (ECF) in Manistee, Manistee County, Michigan. Plaintiff sues Warden Michael Burgess, Deputy Warden J. Clouse, Acting Assistant Deputy Warden J. Erway, Acting Resident Unit Manager J. Montague, Acting Lieutenant Unknown Baker, Department Analyst Susan Norton, Acting Prison Counselor Unknown Verville, and MDOC Director Heidi Washington.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff alleges that, while at the Macomb Correctional Facility (MRF) prior to his stay at ECF, Plaintiff was twice found guilty of possession of a cell phone and received sanctions that included placement in segregation. (ECF No. 1, PageID.11–12; ECF No. 1-6, PageID.47; ECF No. 1-7, PageID.49; ECF No. 1-9, PageID.53.) However, each time, Plaintiff was not released from segregation on time and was forced to spend additional days in segregation. (ECF No. 1, PageID.11–12.) Plaintiff filed grievances related to these incidents. (*Id.*; ECF No. 1-8. PageID.51.) After MRF officials addressed Plaintiff's grievance, Plaintiff was reclassified to administrative segregation, where he remained until his transfer to ECF. (ECF No. 1, PageID.12.) Plaintiff alleges that another MRF prisoner who had also been found guilty of possession of a cell phone was found guilty of possessing meth and had 35 management points (the maximum amount), but was not transferred to administrative segregation. (*Id.*, PageID.13.) Plaintiff alleges that the only difference between Plaintiff and the other MRF prisoner is that Plaintiff had filed a grievance. (*Id.*)

Upon arrival at ECF on December 5, 2022, Plaintiff was placed in solitary confinement by Defendants Burgess, Montague, and Erway, reportedly as a result of the first cell phone misconduct, for which Plaintiff had already completed his sanctions and had been released into general population. (*Id.*, PageID.1, 10–12.)

Plaintiff alleges that several practices within ECF solitary confinement and the segregation unit are unconstitutional and violate MDOC policy.

First, ECF staff used "a metal round reader" to strike metal sensors "every 30 minutes (or so)," resulting in "a disturbance preventing sleep." (*Id.*, PageID.1.) Plaintiff claims that Defendants Burgess and Clouse refused to have the sensors removed. (*Id.*, PageID.1–2.)

Second, while cells in general population have three lights, cells in solitary confinement have only two, which "affect[ed] Plaintiff's vision." (*Id.*, PageID.2.) Plaintiff brought "[t]his problem" to Defendant Burgess' attention but Defendant Burgess did not change the lighting. (*Id.*)

Third, prisoners in solitary confinement do not have access to the electronic law library; they may only request materials using the segregation law library request form, which Plaintiff claims is inadequate. (*Id.*) Prisoners are further restricted to only five legal materials at any time. (*Id.*, PageID.3.) These restrictions prevented Plaintiff from conducting research for unspecified civil and criminal litigation. (*Id.*, PageID.2.)

Fourth, prisoners in solitary confinement are denied the ability to initiate calls with an attorney. (*Id.*, PageID.3.) They are instead only allowed to speak with an attorney via telephone upon request of the attorney. (*Id.*) Plaintiff claims that this prevented him from being able to reach out to attorneys who he would like to hire to represent him in civil and criminal matters. (*Id.*, PageID.3–4.)

Fifth, when Plaintiff was allowed to speak with his counsel over the telephone, Defendant Norton limited the duration of those calls because there was only one phone designated for attorney phone calls. (*Id.*, PageID.5.) Plaintiff states that he "needs sufficient time to meaningfully discuss his legal affairs with counsel." (*Id.*)

Sixth, ECF prisoners are allowed to speak with counsel in a booth with a single landline and another receiver inside. (*Id.*, PageID.5–6.) Plaintiff is aware that "[s]everal MDOC employees" have listened to Plaintiff's attorney-client telephone calls. (*Id.*, PageID.6.)

And seventh, Defendant Burgess failed to ensure that prisoners housed in segregation were provided with a sitting surface inside of the cell, razors three times per week, writing paper, or

personal toiletries. (*Id.*, PageID.10.) Plaintiff claims that "staff" consistently told Plaintiff that there are no razors, writing paper, or toiletries available. (*Id.*)

Additionally, Plaintiff claims that, when he did not receive his property, including his "legal property," within 48 hours of his transfer to ECF, Plaintiff wrote to Defendant Burgess "to no avail." (*Id.*, PageID.6.)

On December 8, 2022, Defendants Baker and Clouse came to Plaintiff's cell and provided Plaintiff with some of his property but told Plaintiff that he would not be getting his legal property because it had others' names on it. (*Id.*, PageID.6–7.) Plaintiff told Defendants Baker and Clouse that it was illegal for them to be reading Plaintiff's legal property. (*Id.*, PageID.7.) Defendant Baker subsequently provided Plaintiff with 18 contraband removal records, dated December 9, 2022, showing that Defendant Baker had reviewed Plaintiff's legal property. (*Id.*; ECF No. 1-1, PageID.20–37.)

On December 16, 2022, Plaintiff submitted a grievance against Defendant Baker related to Defendant Baker's review of Plaintiff's legal property. (ECF No. 1, PageID.7; ECF No. 1-2, PageID.39.) On December 21, 2022, Defendant Baker issued Plaintiff a misconduct report related to the same legal property, though Plaintiff claims that he was lawfully in possession of the documents at issue. (ECF No. 1, PageID.7–8; ECF No. 1-3, PageID.41.)

Defendant Baker also issued Plaintiff a misconduct report for possessing a television that Defendant Baker knew that Plaintiff had been authorized to possess on December 9, 2022. (ECF No. 1, PageID.9; ECF No. 1-5, PageID.45.) When Defendant Verville initiated the hearing on the misconduct report, Defendant Baker instructed Defendant Verville how to handle the hearing. (ECF No. 1, PageID.9.) In addition, Defendants Baker and Verville wrongfully deprived Plaintiff of boxer briefs, shorts, and shoes. (*Id.*, PageID.9–10; ECF No. 1-5. PageID.45.)

Plaintiff seeks nominal, compensatory, and punitive damages. (ECF No. 1, PageID.16.)

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.     First Amendment Retaliation

Upon transfer to ECF on December 5, 2022, Plaintiff was placed in solitary confinement by Defendants Burgess, Montague, and Erway. (ECF No. 1, PageID.1, 10–12.) Plaintiff claims that this was done in retaliation for Plaintiff having filed grievances while at MRF. (*Id.*, PageID.15.)

Plaintiff also alleges that Defendant Baker retaliated against Plaintiff in response to Plaintiff's December 14, 2022, grievance. (ECF No. 1, PageID.6; ECF No. 1-2, PageID.39.) He claims that as a result of this grievance, which complained of Defendant Baker's review and confiscation of Plaintiff's legal materials, Defendant Baker issued Plaintiff a misconduct report for the possession of those same materials. (ECF No. 1, PageID.6–8; ECF No. 1-3, PageID.41.) The Court construes these allegations as claims of First Amendment retaliation.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must allege facts that would plausibly suggest that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). However, "alleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)); *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) ("[B]are allegations of malice on the defendants' parts are not enough to establish retaliation claims [that will survive § 1915A screening]." (citing *Crawford-El v. Britton*, 523 U.S. 574, 588 (1998))).

### 1.    Defendants Burgess, Montague, and Erway

Plaintiff has alleged merely the ultimate fact of retaliation with respect to Defendants Burgess, Montague, and Erway. He describes a series of events that occurred while Plaintiff was at MRF, including Plaintiff's misconducts for possession of a cell phone, related grievances, and the actions of MRF officials. However, Plaintiff does not connect these actions to the named Defendants who were not employed at MRF and who are alleged to have interacted with Plaintiff only upon Plaintiff's transfer to ECF on December 5, 2022.

Although the Court finds that Plaintiff's grievances and complaints were First Amendment protected activity, *see Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018), Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants Burgess, Montague, and Erway were aware of Plaintiff's protected activity, let alone that their decisions to place Plaintiff in solitary confinement at ECF were motivated by Plaintiff's protected activity at his prior facility.

Certainly, the decisions by Defendants Burgess, Montague, and Erway took place after Plaintiff's protected activity. However, simply because one event precedes another by some unspecified amount of time does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive").

Plaintiff points to the treatment of another MRF prisoner, presumably to support his claim of retaliation. He alleges that this unnamed prisoner was similarly situated to Plaintiff but was not transferred to administrative segregation by MRF staff, with the only difference being that Plaintiff had filed a grievance where this prisoner did not. (ECF No. 12–13.) However, the motivation of MRF staff to treat Plaintiff differently than another prisoner—even if retaliatory—cannot be imputed to Defendants Burgess, Montague, and Erway. Plaintiff does not allege facts that would plausibly suggest that Defendants Burgess, Montague, and Erway were involved in the series of events that took place within MRF or in the sanctioning of the unnamed MRF prisoner.

Ultimately, conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678–79; *Twombly*, 550 U.S. at 555. Plaintiff's conclusory claims of retaliation against Defendants Burgess, Montague, and Erway fall far short of the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure. The Court will therefore dismiss Plaintiff's retaliation claims against them.

### 2. Defendant Baker

The same is true of Plaintiff's retaliation claim against Defendant Baker. While the Court finds that Plaintiff's December 14, 2022, grievance was First Amendment protected activity,

Plaintiff fails to allege facts that would plausibly suggest that Defendant Baker's December 21, 2022, misconduct report regarding the possession of contraband was submitted in retaliation for the filing of this grievance, rather than for the possession of items detailed in Defendant Baker's Contraband Removal Records (ECF No. 1-1, PageID.20–37), all of which predated the receipt of Plaintiff's step I grievance (ECF No. 1-2, PageID.39). A review of the Contraband Removal Records reveals that Defendant Baker reviewed the identified contraband from December 9, 2022, through December 15, 2022, (ECF No. 1-1, PageID.20–37; ECF No. 1-3, PageID.41.) These records were handed to Plaintiff over the span of these six days, culminating in a date of violation for a class III misconduct of December 15, 2022. (ECF No. 1-3, PageID.41.) Plaintiff's grievance was received on December 16, 2022. (ECF No. 1-2, PageID.39.)

While the report for the class III misconduct was not completed until December 21, 2022, after Plaintiff's step I grievance had been received, that alone does not state a claim for retaliation. First, there are no facts to show that Defendant Baker was aware of the grievance before issuing the December 21, 2022, misconduct report. And second, simply because one event precedes another by some unspecified amount of time does not automatically show retaliation. *See Coleman v. Bowerman*, 474 F. App'x 435, 437 (6th Cir. 2012) (holding that temporal proximity to the filing of a grievance is insufficient because any adverse action "would likely be in 'close temporal proximity' to one of [the plaintiff's] many grievances or grievance interviews"); *cf. Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004) (noting that "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive"). This is particularly true where Defendant Baker documented the facts underlying the misconduct report in advance of the MDOC's receipt of the grievance.

11

In sum, Plaintiff has alleged nothing more than the ultimate fact of retaliation, which is insufficient to state a First Amendment claim. The Court will dismiss his claim of retaliation against Defendant Baker as well.

**B.      Eighth Amendment Unconstitutional Conditions**

Plaintiff alleges that Defendants Burgess and Clouse subjected Plaintiff to "inhumane treatment" through either their individual actions or through the execution of MDOC policy by "depriving [Plaintiff] of sleep, inadequate lighting, hygiene products, and writing materials." (ECF No 1, PageID.15.) The Court construes these allegations as raising Eighth Amendment claims for unconstitutional conditions of confinement.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Eighth Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

To prevail on an Eighth Amendment claim, a prisoner must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (applying deliberate indifference standard to medical claims); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993) (applying deliberate indifference standard to conditions of confinement claims). The deliberate-indifference standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834.

Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. "[I]t is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. "It is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk." *Id.* at 836.

### 1.    Excessive Noise

Plaintiff alleges that, while in solitary confinement, officers used "a metal round reader" to strike metal sensors "every 30 minutes (or so)," resulting in "a disturbance preventing sleep." (*Id.*, PageID.1.)

"There is no doubt that '[e]xcessive noise in a prison can state a valid Eighth Amendment claim.'" *Kimball v. Bureau of Prisons*, No. 4:13CV225, 2013 WL 3098900, at *8 (N.D. Ohio June 19, 2013) (quoting *Green v. Strack*, No. 94–17214, 1995 WL 341544, at *1 (9th Cir. June 8, 1995)). However, "high levels of noise are not, without more, violations of the Eighth Amendment." *Grubbs v. Bradley,* 552 F. Supp. 1052, 1123 (M.D. Tenn. 1982) (citation omitted).

On an objective level, cases finding an Eighth Amendment violation based on excessive noise have typically "involved incessant noise throughout the day and night, *which at times was significantly beyond acceptable decibel levels and could have resulted in possible hearing loss*." *Kimball*, 2013 WL 3098900, at *8 (emphasis added) (citing *Sterling v. Smith*, No. CV606–103, 2007 WL 781274, at *3 (S.D. Ga. Mar.8, 2007); *Antonelli v. Sheehan,* 81 F.3d 1422, 1433 (7th Cir. 1996); *Toussain v. McCarthy,* 597 F. Supp. 1388, 1410 (N.D. Cal.1984), *rev'd in part on other grounds*, 801 F.2d 1080, 1110 (9th Cir. 1986)). Although Plaintiff alleges that his sleep was disrupted, Plaintiff does not allege that the noise of metal hitting metal during security counts was so excessive or pervasive as to pose an objectively serious risk of hearing loss or pain. Other than the disruption of Plaintiff's own sleep, Plaintiff alleges no facts that would demonstrate that the noise levels were objectively "intolerable for prison confinement," *Rhodes*, 452 U.S. at 348. Indeed, noise caused by striking sensors while conducting rounds is not an atypical or significant hardship in relation to the ordinary incidents of prison life. *Kimball*, 2013 WL 3098900, at *8 (citing *Sandin v. Conner*, 515 U.S. 472, 484 (1995)).

Yet even assuming, without deciding, that Plaintiff could demonstrate an objective deprivation caused by the unnamed officers within Plaintiff's segregation unit striking metal sensors, the inquiry does not end there. "The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'" *Farmer*, 511 U.S. at 837. Plaintiff must still plead facts to plausibly suggest that Defendants acted with a sufficiently culpable state of mind, that of "deliberate indifference." *Wilson v. Seiter*, 501 U.S. 294, 303 (1991).

In the body of Plaintiff's complaint, Plaintiff names as Defendants Burgess and Clouse with respect to his noise claim. Plaintiff alleges that Defendants Burgess and Clouse refused to

14

correct the issue. Plaintiff does not describe what he told Defendants Burgess and Clouse or what they responded in return.

Government officials, such as Defendants Burgess and Clouse, may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

The Sixth Circuit repeatedly has summarized the minimum required to constitute active conduct by a supervisory official:

> "[A] supervisory official's failure to supervise, control or train the offending individual is not actionable *unless* the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Shehee,* 199 F.3d at 300 (emphasis added) (internal quotation marks omitted). We have interpreted this standard to mean that "at a minimum," the plaintiff must show that the defendant "at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers."

*Peatross v. City of Memphis*, 818 F.3d 233, 242 (6th Cir. 2016) (quoting *Shehee*, 199 F.3d at 300, and citing *Phillips v. Roane Cnty.*, 534 F.3d 531, 543 (6th Cir. 2008)); *see also Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) (citing *Rizzo v. Goode*, 423 U.S. 362, 375–76 (1976),

and *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989).

Even if the noise experienced by Plaintiff was excessive on an objective level, Plaintiff fails to allege facts that would show that Defendants Burgess and Clouse knew that the manner in which unidentified prison staff were conducting their security rounds would have amounted to a violation of Plaintiff's constitutional rights. Plaintiff indicates that Defendants Burgess and Clouse refused to stop the process. However, Plaintiff does not elaborate as to what he told either Defendant. He also provides no facts to suggest that the excessive noise—if objectively unreasonable—was inherent in the procedure itself rather than a function of how the rounds were conducted by the individual officers. In sum, Plaintiff has not pleaded facts sufficient to demonstrate approval or acquiescence on the part of Defendants Burgess and Clouse as to the specific and allegedly unconstitutional activities.

Ultimately, Plaintiff's complaint is devoid of facts that would plausibly suggest that Defendants Burgess and Clouse, in continuing to allow officers to conduct rounds using metal round readers within the segregation unit generally, were engaged in an "unnecessary and wanton infliction of pain" in violation of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d at 954. There is nothing to indicate these Defendants knew of but consciously disregarded a serious risk to Plaintiff's health or safety, or that the risk was excessive in relation to the purpose of the activity. Accordingly, the Court will dismiss Plaintiff's Eighth Amendment claim related to excessive noise.

### 2.      Inadequate Lighting

Plaintiff complains that the solitary confinement cells have only two lights instead of the three found in general population cells, and that this difference in lighting was "harmful" and "affect[ed] Plaintiff's vision." (ECF No. 1, PageID.2.) Plaintiff does not elaborate on the harm or

the effect. (*Id.*) He claims that Defendant Burgess was aware of this issue as well, but did not address the same.

The Sixth Circuit has held that that constitutional requirement of adequate shelter for a prisoner includes the provision of adequate lighting. *Carney v. Craven*, 40 F. App'x 48, 51 (6th Cir. 2002). However, to state a claim of inhumane housing conditions, Plaintiff must establish that the questioned condition—here, two lights instead of three—posed an excessive risk to Plaintiff's health or safety to which a defendant was deliberately indifferent. *Farmer,* 511 U.S. at 842; *see Powell v. Washington*, 720 F. App'x 222, 224–25 (6th Cir. 2017) (holding that the plaintiff stated an Eighth Amendment claim based upon inadequate lighting where he had "no working light in his cell" for 35 days, which left the plaintiff unable to properly clean his cell and resulted in a deterioration of the plaintiff's mental health); *Monical v. Jackson Cnty.*, No. 1:17-CV-00476-YY, 2021 WL 1110197, at *9 (D. Or. Mar. 23, 2021) (finding that the plaintiff had stated a claim of inadequate lighting where the cell had a single light bulb, "[t]he lighting was so bad that deputies could not see [the plaintiff] inside the cell without putting their foreheads to the window and blocking out the hallway light so they could see inside," and where the plaintiff's eyesight was permanently damaged as a result). Plaintiff has not made that showing.

Plaintiff alleges only that the lighting was "harmful;" he makes no effort to describe the alleged harm in such a way that this Court could conclude that it posed a serious risk to Plaintiff's safety or well-being. And it is difficult to conclude that two working lights, one less than that in general population, would rise to the level of a sufficiently extreme deprivation required to state an Eighth Amendment claim.

Moreover, while Defendant Burgess may be familiar with the lighting within the segregation unit, there is no indication from the complaint that Defendant Burgess actually knew

17

of but disregarded a serious risk of harm to Plaintiff presented by the purported lighting problem.
*See Farmer,* 511 U.S. at 837 (holding that deliberate indifference may be shown where the official is aware of facts from which to infer that a substantial risk of serious harm exists *and* where he actually draws the inference). Plaintiff's conclusory allegations of unconstitutional conduct on the part of Defendant Burgess without specific factual allegations fail to state a claim under § 1983. *See Iqbal*, 556 U.S. at 678– 79; *Twombly*, 550 U.S. at 555. The Court will therefore dismiss Plaintiff's Eighth Amendment claim premised upon inadequate lighting.

### 3.      Lack of a "Sitting Surface"

Plaintiff contends that Defendant Burgess failed to ensure that prisoners housed in segregation were provided with a designated "sitting surface" inside of the cell. (ECF No. 1, PageID.10.) He claims that chairs were not permitted (*Id.*) Plaintiff provides the Court with no additional information but does not allege that he was deprived of a bed on which he could sit or lie down.

Plaintiff's allegation that a separate "sitting surface" was not provided to prisoners within segregation cells, without more, simply does not amount to a denial of "the minimal civilized measure of life's necessities" needed to state an Eighth Amendment claim. *Farmer,* 511 U.S. at 834. Therefore, this claim will be dismissed.

### 4.      Deprivation of Razors, Paper, and Hygiene Products

As to Plaintiff's claim that he was deprived of razors, writing paper, and personal hygiene products, Plaintiff alleges that unnamed "staff" told Plaintiff that these items were not available. (ECF No. 1, PageID.10.) Plaintiff faults Defendant Burgess for not ensuring their availability.

Even assuming that the deprivation of these items for the time that Plaintiff was held in segregation was sufficiently serious so as to be an extreme deprivation intolerable for prison confinement, as discussed in detail above, Defendant Burgess may not be held liable for the

18

unconstitutional conduct of his subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495. There is no indication that Defendant Burgess was aware that these items were not available or that staff were not providing them to Plaintiff, and there are no facts to plausibly suggest that Defendant Burgess "implicitly authorized, approved, or knowingly acquiesced" in the allegedly unconstitutional conduct by not providing these items to Plaintiff as needed. *Peatross*, 818 F.3d at 242. Plaintiff's conclusory claim against Defendant Burgess for not ensuring the availability of razors, writing paper, and personal hygiene products fails to state an Eighth Amendment claim and will be dismissed.

### C.     First Amendment Denial of Access to the Courts

Plaintiff contends that Defendants interfered with Plaintiff's access to the courts in several ways. Plaintiff claims that MDOC policy, as implemented by Defendants Burgess and Washington, prohibits Plaintiff from accessing the electronic law library, possessing more than five legal materials at any time, and making outgoing calls to an attorney while in solitary confinement. (ECF No. 1, PageID.2–4.) Plaintiff also alleges that Defendant Norton "arbitrarily limits the amount of time" that Plaintiff may speak with his attorney on the telephone when calls are scheduled. (*Id.*, PageID.5.) Finally, Plaintiff claims that he was deprived of his legal property. (*Id.*, PageID.6–8.)

It is well established that prisoners have a First Amendment constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The right of access to the courts prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. To state a viable claim for interference with his access to the courts, a plaintiff must

19

show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead facts that would plausibly suggest that the actions of the defendants have hindered, or are presently hindering, Plaintiff's efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351–53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (discussing that *Lewis* changed actual injury to include requirement that action be non-frivolous).

In addition, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Therefore, a plaintiff must plead facts that would demonstrate that "a nonfrivolous legal claim ha[s] been frustrated or was being impeded" in a manner "sufficient to give fair notice to the defendant." *Id.* at 415–16. The predicate claim must "be described well enough to apply the 'nonfrivolous' test and to show the 'arguable' nature of the underlying claim is more than hope," and "the remedy sought must itself be identified" and not

20

otherwise available in a lawsuit that has not yet been brought. *Id.*; *see also Clark v. Johnston*, 413 F. App'x 804, 816 (6th Cir. 2011).

Plaintiff fails to provide this Court with any facts that would suggest that the actions of Defendants discussed above hindered Plaintiff's prosecution of a direct appeal, habeas corpus application, or civil rights claims, as would trigger Plaintiff's right to access to the courts. *Thaddeus-X*, 175 F.3d at 391. Plaintiff also fails to provide this Court with sufficient facts to meet the element of actual injury in that he has not described any nonfrivolous legal claim that has been frustrated or impeded by Defendants actions. *See Christopher*, 536 U.S. at 415–16. Accordingly, the Court will dismiss Plaintiff's claims for interference with his access to the Courts in their entirety.

### D.    First Amendment Violation of Right to Receive Confidential Information

Plaintiff alleges that Defendant Burgess interfered with Plaintiff's right to conduct privileged telephone calls with his attorney by failing to provide a confidential setting for attorney-client telephone calls. (ECF No. 1, PageID.5, 15.) He also claims that Defendant Baker "invaded the attorney-client privilege and confidentiality of legal materials Plaintiff received from his counsel" as demonstrated by the contraband removal records attached to Plaintiff's complaint. (*Id.*, PageID.7.) Plaintiff alleges that the "only way" that Defendant Baker could have learned of the names and case numbers on the documents listed in the contraband removal records was by reading the contents of Plaintiff's "legal documents." (*Id.*)

#### 1.    Defendant Burgess

Plaintiff's fails to state a claim under § 1983 in alleging that Defendant Burgess failed to provide a confidential location for attorney-client telephone calls. As with all § 1983 claims, it is Plaintiff's responsibility to plead facts that would show personal involvement on the part of Defendant Burgess. He has not.

Plaintiff alleges that ECF prisoners are provided with a booth in which to conduct telephone calls with counsel. (ECF No. 1, PageID.5–6.) Though Plaintiff is aware that "[s]everal MDOC employees" have listened to Plaintiff's attorney-client telephone calls, (*id.*, PageID.6), there is nothing to indicate that Defendant Burgess eavesdropped on Plaintiff's telephone calls or "implicitly authorized, approved, or knowingly acquiesced" in others doing the same. *Peatross*, 818 F.3d at 242. Indeed, Plaintiff has alleged no facts to suggest that Defendant Burgess was aware that others had listened to Plaintiff's telephone calls or that the booth in which the single landline was placed was not a private location. Because Plaintiff fails to plead facts to demonstrate that Defendant Burgess personally engaged in any violation of Plaintiff's right to share confidential information with his attorney, the Court will dismiss his claim.

With respect to Plaintiff's claim that Defendants read Plaintiff's legal documents in order to discover the contraband listed on the removal records, the Sixth Circuit has recognized that a prison's security needs do not automatically trump a prisoner's right to receive confidential correspondence "that impacts upon or has import for the prisoner's legal rights, the attorney-client privilege, or the right of access to the courts." *Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003) (citing *Kensu v. Haigh,* 87 F.3d 172, 174 (6th Cir. 1996)); *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)) ("In balancing the competing interests implicated in restrictions on prison mail, courts have consistently afforded greater protection to legal mail than to non-legal mail. . . ."). However, as the Sixth Circuit explained in *Sallier*,

> Not all mail that a prisoner receives from a legal source will implicate constitutionally protected legal mail rights. Indeed, even mail from a legal source may have little or nothing to do with protecting a prisoner's access to the courts and other governmental entities to redress grievances or with protecting an inmate's relationship with an attorney.

*Sallier*, 343 F.3d at 874.

The same is true for Plaintiff's "legal documents," many of which have been identified as contraband, not constitutionally protected. Plaintiff does not allege that the confiscated documents, although "legal" in nature, were specifically protected by the attorney-client privilege or were Plaintiff's own filings from any lawsuits so as to confer First Amendment protection. Indeed, a review of the materials listed in the contraband removal forms shows that they pertain to cases other than those filed by Plaintiff and are not materials filed by Plaintiff or received by the Court in Plaintiff's cases. (*See* ECF No. 1-1, PageID.20–37.) Rather, these materials—which appear to be primarily copies of court opinions in other inmates' cases—may be more in line with the potential legal research that Plaintiff describes within his complaint. (*See* ECF No. 1, PageID.8.) Regardless of whether Plaintiff believes that he is entitled to possess such documents under MDOC policy, they do not implicate Plaintiff's constitutional rights.

It is Plaintiff's obligation to plead enough facts that would set forth a claim plausible on its face; conclusory allegations do not suffice. *See Iqbal*, 556 U.S. at 663. Because Plaintiff's allegations fail to satisfy the plausibility standard required of Rule 8 of the Federal Rules of Civil Procedure, the Court will also dismiss Plaintiff's claims premised upon Defendants' reading of Plaintiff's legal documents.

### E. Fourteenth Amendment Deprivation of Property

Plaintiff contends that Defendants Burgess, Baker, Verville, and Clouse wrongfully deprived Plaintiff of his legal and personal property, either temporarily or permanently. (ECF No. 1, PageID.6–10.) The Court will construe this as a claim for violation of Plaintiff's Fourteenth Amendment due process rights.

Plaintiff's claims, however, are barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due

process claim unless the state fails to afford an adequate post-deprivation remedy. *Id.* at 541. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Id.* at 537. This rule applies to both negligent and intentional deprivations of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson*, 468 U.S. at 530– 36. Because Plaintiff's claims are premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *See Copeland v. Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit authority, a prisoner's failure to sustain this burden requires dismissal of his § 1983 due process action. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state or any of its departments or officers." Mich. Comp. Laws § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property. Accordingly, the Court will dismiss Plaintiff's due process claims against Defendants Burgess, Baker, Verville, and Clouse for the deprivation of Plaintiff's property.

### F.     Fourteenth Amendment Violation of Procedural Due Process

Plaintiff claims that, when Defendant Verville initiated the hearing on Plaintiff's misconduct for possessing a television, Defendant Baker instructed Defendant Verville on how to conduct the hearing. (ECF No. 1, PageID.9.) Construed liberally, it appears that Plaintiff is

24

challenging his misconduct conviction as unfair under the Fourteenth Amendment's Due Process Clause.

A prisoner's ability to challenge a prison misconduct conviction for violation of due process depends on whether the conviction implicated any liberty interest. A prisoner does not have a protected liberty interest in prison disciplinary proceedings unless the sanction "will inevitably affect the duration of his sentence" or the resulting restraint imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995).

Plaintiff does not allege that that he was convicted of the December 9, 2022, misconduct for, *inter alia*, possession of a television "belonging to prisoner Pagan" (ECF No. 1-5, PageID.45) and, regardless, he does not allege that any misconduct conviction had an effect on the duration of his sentence; he cannot. Plaintiff is serving sentences imposed in 2006 for crimes committed in 2005. *See* Offender Tracking Information System (OTIS), https://mdocweb.state.mi.us/OTIS2/otis2profile.aspx?mdocNumber=571990 (last visited June 8, 2023). The Sixth Circuit has examined Michigan statutory law, as it relates to the creation and forfeiture of disciplinary credits for prisoners convicted for crimes occurring after April 1, 1987. In *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007), the court determined that loss of disciplinary credits does not necessarily affect the duration of a prisoner's sentence. Rather, it merely affects parole eligibility, which remains discretionary with the parole board. *Id.* at 440; *see also Nali v. Ekman*, 355 F. App'x 909, 912 (6th Cir. 2009). Building on these rulings, in *Taylor v. Lantagne*, 418 F. App'x 408, 412 (6th Cir. 2011), the court held that under the current iteration of Michigan's good behavior reward scheme, known as disciplinary time, a misconduct citation in the Michigan prison system does not affect a prisoner's constitutionally protected liberty interests, because it does not necessarily affect the

length of confinement. *See also Wilson v. Rapelje*, No. 09-13030, 2010 WL 5491196, at * 4 (E.D. Mich. Nov. 24, 2010) (holding that "plaintiff's disciplinary hearing and major misconduct sanction does not implicate the Fourteenth Amendment Due Process Clause"), *report and recommendation adopted*, 2011 WL 5491196 (E.D. Mich. Jan. 4, 2011). In the absence of a demonstrated liberty interest, Plaintiff has no due process claim based on a loss of disciplinary credits. *See Bell v. Anderson*, 301 F. App'x 459, 461–62 (6th Cir. 2008).

It is worth noting that, in relation to the second aspect of *Sandin*, Plaintiff also does not allege that a misconduct conviction, if one existed, resulted in an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *See Sandin*, 515 U.S. at 487. Plaintiff's complaint gives no indication of any result or hardship at all. For these reasons, Plaintiff fails to state Fourteenth Amendment due process claims against Defendants Verville and Baker based upon the misconduct hearing.

### G. Fourteenth Amendment Violation of Equal Protection

Viewed indulgently, Plaintiff's claim that another MRF prisoner was treated more favorably than Plaintiff by MRF staff (ECF No. 1, PageID.12–13.) may also be an attempt to raise a claim for violation of Plaintiff's Fourteenth Amendment right to equal protection. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws[,]" which is essentially a direction that all persons similarly situated should be treated alike. U.S. Const. amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). The Sixth Circuit has described a universe of three types of equal protection claims:

> "The Equal Protection Clause prohibits discrimination by government which either burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis for the difference." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty. Ohio*, 430 F.3d 783, 788 (6th Cir. 2005). [Plaintiff] does not argue an infringement of a fundamental

26

right or that he is a member of a suspect class. Rather, [Plaintiff] relies on the third argument—whether others "similarly situated" received different treatment "without any rational basis for the difference." Id. This is called a "class-of-one" theory. *See Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 145 L.Ed.2d 1060 (2000) (per curiam).

*Davis v. Detroit Pub. Schs. Cmty. Dist*., 835 F. App'x 18, 22 (6th Cir. 2020). "[T]he hallmark of [a class-of-one] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class." *Davis v. Prison Health Servs*., 679 F.3d 433, 441 (6th Cir. 2012) (internal quotation marks omitted).

Plaintiff does not allege that he was denied a fundamental right. Nor does he claim that he was targeted because of his membership in a protected class. Instead, Plaintiff simply claims that no other prisoner was treated similarly to Plaintiff. Plaintiff is alleging a "class of one" equal protection claim.

To prove a class-of-one equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook*, 528 U.S. at 564; *see also Nordlinger v. Hahn*, 505 U.S. 1, 10–11 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). However, Plaintiff's equal protection claim, like any claim under § 1983, requires that Plaintiff plead factual allegations to plausibly suggest the personal involvement of the named Defendants; liability cannot be based upon a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell*, 436 U.S. at 691; *Everson*, 556 F.3d at 495; *see also Taylor v. Michigan Dep't of Corr*., 69 F.3d 76, 80-81 (6th Cir. 1995) (plaintiff must allege facts showing that the defendant participated, condoned, encouraged, or knowingly acquiesced in alleged misconduct to establish liability).

27

Plaintiff fails to allege that any named Defendant played any role in Plaintiff's treatment while at MRF or the treatment of any other MRF prisoner. Thus, to the extent that Plaintiff alleges that the named Defendants should be held liable for Plaintiff's unequal treatment while at MRF, he fails to state a claim upon which relief may be granted.

Even if Plaintiff complains of his treatment only upon arrival at ECF, Plaintiff fails to allege that the MRF prisoner was similarly situated to Plaintiff in all relevant respects. *See Umani*, 432 F. App'x at 458. To be similarly situated, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or their employer's treatment of them for it.'" *Umani*, 432 F. App'x at 460 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)). Although Plaintiff alleges that that the MRF prisoner had also been found guilty of possession of a cell phone, was found guilty of possessing meth, and had 35 management points (the maximum amount), (ECF No. 1, PageID.13), there is no allegations that this MRF prisoner was subjected to the same ECF decisionmakers named in Plaintiff's complaint. Accordingly, here too, Plaintiff fails to state a claim under the Equal Protection Clause.

## H.     Conspiracy

Plaintiff claims that Defendants were engaged in a conspiracy to violate Plaintiff's civil rights. (ECF No. 1, PageID.15.) However, a plaintiff "cannot succeed on a conspiracy claim [when] there was no underlying constitutional violation that injured [the plaintiff]." *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009) (citing *Bauss v. Plymouth Twp.*, 233 F. App'x 490, 500 (6th Cir. 2007)). As thoroughly discussed above, Plaintiff fails to set forth any claim for violation of Plaintiff's constitutional rights while at ECF.

28

To the extent that Plaintiff seeks to bring a claim for conspiracy related to claims of First Amendment retaliation and violation of Plaintiff's right to equal protection for events that took place while Plaintiff was housed at MRF, Plaintiff fails to allege sufficient facts that would state a claim against the named Defendants.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action." *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)). The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff. *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011). Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 566 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Here, Plaintiff's allegations of conspiracy are wholly conclusory. He alleges no facts that indicate the existence of a plan, much less that any Defendant shared a conspiratorial objective with MRF staff. Instead, Plaintiff's allegations, even viewed in the light most favorable to Plaintiff, describe discrete occurrences over a period of time involving numerous individual prison staff. He appears to rely entirely on a highly attenuated inference from the mere fact that he has been disciplined by or subjected to objectionable treatment by a variety of prison officials in various circumstances. As the Supreme Court has held, such allegations, while hinting at a sheer

"possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556–57. Instead, the Court has recognized that although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680 (citing *Twombly*, 550 U.S. at 567). In light of the far more likely possibility that the various incidents at both ECF and MRF were unrelated, Plaintiff fails to state a plausible claim of conspiracy.

## I.    Violation of MDOC Policy

Finally, Plaintiff alleges that many of the actions of Defendants violated MDOC policy. Section 1983, however, does not provide redress for violations of state law. *See Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). The only possible way a policy might enjoy constitutional protection would be through the Fourteenth Amendment's Due Process Clause.

To demonstrate a due process violation, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause; and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)). Courts have routinely recognized that a prisoner does not enjoy any federal protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164. Plaintiff's allegations that Defendants violated MDOC policy, therefore, fail to raise any cognizable federal constitutional claim.

30

To the extent Plaintiff seeks to invoke this Court's supplemental jurisdiction over state law claims for violations of MDOC policy, this Court declines to do so. Ordinarily, where a district court has exercised jurisdiction over a state law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state law claims. *See Experimental Holdings, Inc. v. Farris* 503 F.3d 514, 521 (6th Cir. 2007) ("Generally, once a federal court has dismissed a plaintiff's federal law claim, it should not reach state law claims." (citing *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966))); *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld*, 994 F.2d at 1182; *see also Moon v. Harrison Piping Supply*, 465 F.3d 719, 728 (6th Cir. 2006) ("Residual jurisdiction should be exercised only in cases where the interests of judicial economy and the avoidance of multiplicity of litigation outweigh our concern over needlessly deciding state law issues." (internal quotations omitted)). Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012).

Here, because the Court will dismiss Plaintiff's federal claims against all Defendants, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's state law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's federal claims will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's state law claims alleging

31

violations of MDOC policy will be dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over such claims.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore*, 114 F.3d at 611. Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis, e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:   June 21, 2023                              /s/ Ray Kent
                                                    Ray Kent
                                                    United States Magistrate Judge